IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### FEBRUARY TERM, 1890.

---

ELIZABETH WAGNER v. THE HOWARD SAVINGS INSTI-
TUTION.

1. Where one by-law of a savings bank declared "that no person shall
have the right to demand any part of the principal or interest without
producing the original deposit-book, that such payments may be entered
therein," and another of such by-laws declared that "should any de-
positor lose his book he is required to give immediate notice thereof
to the institution, and, in case of doubt as to the identity of the de-
positors or claimants, the board may require such testimony and
security as they may deem necessary"—*Held*, that these by-laws,
properly construed, did not signify that if the deposit-book were lost,
its non-production was a bar to the right of the depositor to demand
and sue for his deposit.

2. *Quære.* Whether such a company could enter into any contract which
would preclude the depositor, in case of the loss of his book, from suing
for the moneys due him.

---

The following was the case certified :

At the trial of the issues in the above-stated cause before
the court, without a jury, the following proofs were made :

*First.* That on the 14th day of September, A. D. 1886, the
plaintiff deposited with the defendant, a savings institution

in the city of Newark, the sum of $50, and an account with her in that name and numbered 49,225 was then opened; the defendant gave her a deposit-book with the same number thereon, and a copy of the said book, containing extracts from the by-laws and constitution of said defendant corporation, printed in the said books, is hereto annexed, and to be considered as part hereof.

Among these by-laws are the following:

"Art. 9. All drafts must be made personally or by order in writing of the depositor, if the institution have the signature of the party in their signature-book, or by letters of attorney duly authenticated; but no person shall have the right to demand any part of the principal or interest without producing the original deposit-book, that such payments may be entered therein.

"Art. 10. All deposits shall be entered in the books of the institution, and a duplicate or pass-book shall be given to each depositor, in which the deposit shall be entered, and which shall be the voucher for the depositor; and possession of such duplicate or pass-book may be treated by the institution as authority to pay the amount due thereby to the person producing the same, and all payments so made shall be deemed good and valid payments to the depositors respectively."

The Howard Savings Institution was incorporated by an act approved March 16th, 1857 (*Pamph. L., p.* 219, &c.), *pro ut* the same. By section 3 of this act, it was provided that the board of managers should have power to make, ordain and establish such by-laws and regulations as they should judge proper for the transacting, managing and directing of the affairs of the institution not repugnant to the constitution and by-laws of this state, or of the United States. By section 4, it was provided "that the institution may receive as deposits all sums of money which may be offered for the purpose of being invested, in such amounts and at such times and on such terms as the by-laws shall prescribe, which shall be invested accordingly, and shall be repaid to the depositors at such times and with such interest and under

such regulations as the board of managers shall from time to time prescribe."

Section 12 requires " that every person depositing money shall be furnished with a duplicate of his or her account, in which every deposit or payment shall be regularly entered as soon as made." The board of managers duly adopted by-laws (*pro ut* the same), among which were the by-laws above set out—the portion of the by-laws relating to the deposits being printed in each deposit-book.

*Second.* The account, as it stood on the trial, showed that there had been, from the date of the first deposit up to the time of trial, deposits and interests placed to her credit amounting to $1,508.02, and the debits against said account amounting to $650, leaving a balance standing to her credit in said bank of $858.02.

*Third.* It was proved that the said book of deposit, numbered 49,225, had been stolen from the plaintiff on the 4th day of July, A. D. 1887; that she had never assigned said book to any person or persons whatsoever; that she had, on the 5th day of July, A. D. 1887, notified the said bank that her said book had been stolen, and that she also caused a notice to be inserted in the " Newark Daily Advertiser," a newspaper published in the city of Newark, of which the following is a true copy : " Lost or Stolen.—Deposit-book No. 49,225, of the Howard Savings Institution. Finder will be rewarded by leaving same at the office of Philip Lowy, 764 Broad street."

*Fourth.* That the plaintiff has, from time to time, made demand on said defendant for the balance of money which might at such times be due her, but that said defendant has always resisted the payment of the whole or any part of said money, unless said plaintiff produce the original book of deposit, or give to said defendant a bond of indemnity.

*Fifth.* That no demand under said book has ever been made by any other person to said defendant than the plaintiff, or some other person in her behalf.

*Sixth.* One Mary Brady was arrested for the larceny of the book, and was indicted by the grand jury of Essex county at the September term, 1887, but the indictment has never been tried, the prosecutor stating, on the trial of this cause, that the failure to try the indictment was due to the sickness of a material witness.

Upon the above facts, I certify to the Supreme Court for its advisory opinion the question, whether the plaintiff is entitled to recover the amount remaining due on the account, in a court of law, and without giving a bond of indemnity; and also the question, whether, if she be so entitled to recover, the defendant is entitled to indemnity for costs.

The charter of the defendant, and the by-laws printed in the deposit-book, are to be considered as part of the certificate to be referred to on the argument, if necessary, and the statement made by the Circuit judge on directing the certificate shall also be annexed in the printed case.

DAVID A. DEPUE, *J.*

On the hearing of the case, Justice Depue made the following statement: " I am entirely satisfied that this is the woman who deposited the money, that this money is hers and that the book was lost. There is no theory on which there could be hesitation on that subject. Her preparation for her journey to Germany is convincing proof. The case is so clear that there is no question about it; nor is there any doubt with regard to the good faith of the bank. It is an important case. One of my difficulties in the case was with regard to the indemnity to the bank with respect to costs. In looking at this matter on both sides, it occurred to me that a remedy might be had in a court of equity, and that that remedy would be subject to indemnity to the institution for costs. I will certify the facts that are found, and I want included in the case the demand, the advertisement, and the fact that the officers of the bank refused to pay simply on the ground of the non-production of the book and the refusal to give indemnity, and that no one else has ever presented the book.

I am satisfied that the book was stolen. I would like you to prepare this state of the case as soon as convenient, and, in drawing the certificates, follow the facts stated. Because of the importance of this case, and its doubt and difficulty, I certify it to the Supreme Court. Another reason for sending it to the Supreme Court would be with regard to having the practice in cases of this kind settled. This suit might have been brought the day after that demand, and in the meantime some assignee for value, to whom the vouchers gave the apparent right, might present it without actual right."

Argued at November Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiff, *Frank C. Willcox.*

The sole question in this case is, whether the defendant institution can be compelled to pay to a depositor a sum of money standing to her credit when it is proved that her deposit-book has never been assigned to a third person, but has been stolen, and therefore cannot be produced, and no claim has been made by any other person for such money. The cases on this matter are not numerous. There is no adjudication on this subject in this state.

*First.* The plaintiff cannot be compelled to do an impossibility, nor do the by-laws of the defendant provide for the giving of a bond of indemnity. *Warhus, Admr.,* v. *Bowery Savings Bank,* 21 N. Y. 543.

Frederick Warhus, the appellant's intestate, on December 20th, 1852, opened an account in defendant bank. The intestate was a German, and he signed the rules and regulations of the bank and received a pass-book, in front part of which the rules and regulations were pasted. One was, " No person shall have the right to demand any part of his principal or interest without producing original book, that such payment may be entered thereon."

In August, 1854, plaintiff, being intestate's administrator, demanded the money—said he had not the book. On the trial, the judge offered to allow the plaintiff to prove that the pass-book had been destroyed or lost, or that, on a proper search made for it, it could not be found. The court said, speaking of the regulations to produce the book:

"We see nothing unreasonable in this regulation, and we fail to come to the conclusion that it was intended, or does, in fact, make any forfeiture of the depositor's money.

"It is to receive a reasonable construction, and not to be perverted to consummate fraud or work injustice.

"If the depositor, when he wishes to withdraw his money, cannot do what the regulations of the defendant require, and what he has agreed and stipulated to do, he must certainly do the next best thing—account for the non-production, and show its loss or destruction.

"There would be no safety, either to the bank or to the depositor, if the former was bound to pay on demand, without the production of the pass-book as the evidence of authority to receive the money by the person demanding it; or, if it is not produced, the same security to both requires some excuse for its non-production to be given. The case was put as favorably for the plaintiff, by the judge at the trial, as it could have been, and as he did not avail himself of the privilege given to prove that the pass-book had been lost or destroyed, or that on proper search made for it it could not be found, but chose to place himself upon his strict right to the money on a demand for it, without any compliance with this regulation or offer to excuse such non-compliance, he must abide by the consequences of the position assumed. We think the grossest injustice would follow from the adoption of the principle upon which it is sought to maintain this action.

"On the contrary, we think that if we hold that the pass-book should have been produced, or proof given of its loss or destruction, or that proper search had been made for it and that it could not be found, no injustice is done to either party, but that the rights and security of both alike are preserved.

If the plaintiff make such proof, he will be entitled to his money on demand, and, if the bank should then refuse payment of it, an action could be maintained.

" We are clearly of the opinion that, upon the facts appearing in this case, this action cannot be maintained, and the complaint was properly dismissed." *Palmer* v. *Provident Institution for Savings,* 14 *R. I.* 68.

Action to recover money deposited by plaintiff's intestate with defendant, with dividends of interest, &c. ; book could not be produced by the plaintiff; he could not find from the decedent's relatives where it was ; charter and by-laws provide " that no person shall receive any part of his dividends or principal without producing the original book, that such payment may be entered thereon." . .

Intestate had signed the by-laws and assented to all of them ; contended by bank that, by reason of provisions in charter and by-laws, they cannot pay the money without the book. The provision was evidently designed as a safeguard.

"A depositor, therefore, who can produce his book, may reasonably be required to do so, as the condition of receiving payment.

" But we do not think that either the legislature, when they incorporated the provision into the defendant's charter, or its trustees, when they inserted it in the by-laws, contemplated that it should be applied to a depositor unable to produce the book in consequence of its loss or destruction, or the wrongful withholding its possession from him by another.

" The practical effect of such a construction would be to deprive a depositor so situate of his money."

Cites *Warhus* v. *Bowery Savings Bank,* 21 *N. Y.* 543, and speaks of no effort there on part of plaintiff to show why he did not produce the book.

Referring to demand for a bond of indemnity, says : " We see no occasion for such a bond."

Refers to *Wall* v. *Provident Institution for Savings,* 6 *Allen* 320. There the fund was claimed by a third party. On page 72, in the present case, no claim to the fund has been

interposed by any other person, nor has the defendant had notice of the legal or equitable claims of any other person than the plaintiff thereto.

The above case is analogous to case at issue, with exception of the plaintiff being an administrator, while here the plaintiff is the original depositor. The case relied upon by the defendant as overruling Warhus v. Bowery Bank, is *Mitchell* v. *Home Savings Bank*, 38 *Hun* 255.

But it was held that plaintiff must comply with the by-laws, and the eighth by-law provided, that in case of loss of a pass-book, on satisfactory proof and adequate indemnity, a duplicate might be issued.

There is no provision in the by-laws of the defendant for indemnity. Therefore the plaintiff cannot be compelled to go beyond her contract with the bank, and if she cannot produce her book because it has been stolen, then she must do the next best thing and prove its loss, which she did to the satisfaction of the Circuit judge.

*Second.* The Circuit judge found that as a matter of fact the book had been stolen; therefore, the person taking the same would take no legal title.

For the defendant, *John R. Emery.*

Upon the facts stated in the certificate, a single· question arises, viz., whether the by-laws of the defendant, providing that no depositor shall have the right to demand any part of the principal or interest without producing the original deposit-book, is a bar to the recovery by the plaintiff in a court of law. The defendant insists that this provision is a bar to such recovery, and that no recovery can be had against it in any court, either of law or equity, without the tender of a bond of indemnity.

I. The by-law in question, being reasonable and lawful, was made within the scope of the power of the institution under its charter, and having been assented to by the plaintiff, became part of contract between the parties. *Eaves* v. *People's*

*Savings Bank,* 27 *Conn.* 229 ; *Wall* v. *Prudent Savings Institution,* 3 *Allen* 96 ; *Sullivan* v. *Lewiston Savings Institution,* 56 *Me.* 507 ; *Heath* v. *Portsmouth Savings Bank,* 46 *N. H.* 78 ; *Israel* v. *Bowery Savings Bank,* 9 *Daly* 507 ; *Mitchell* v. *Home Savings Bank,* 38 *Hun* 255 ; *Burrill* v. *Dollar Savings Bank,* 92 *Penna. St.* 134.

The by-law in question is not only reasonable, but absolutely essential to the protection of the bank, and to the safe conduct of its business. The depositors are thousands in number, and some rule of this stringent character is absolutely necessary, in order to ensure the proper care in the custody of the books. It is also important for the purpose of establishing the identity of the depositor.

The practical result of allowing a recovery at law in the present case will be that on any allegation of loss or theft of a missing book, the depositor may insist upon ignoring the by-law to which he has assented, and submitting to a jury the question of sufficient proof of loss or theft.

This would leave the bank unprotected against recovery by a *bona fide* assignee of the deposit-book, for, under the rules requiring the production of the book in order to get deposit, and treating the deposit-book as the voucher, an assignee would not be guilty of negligence in not at once notifying the bank of the assignment, and might hold the bank, notwithstanding a previous recovery by the assignor.

If an action lies, then the plaintiff, as the judge suggests, might have brought his suit to recover at once against the bank, and without allowing time for the production of the book by the assignee.

Not only might such actions, if sustained, be used to defeat an assignee of the book, but it would also afford an opportunity for fraudulent combinations.

The bank resists the compulsory payment of this claim against the express terms of their by-laws and the contract between the parties, because, in the judgment of its officers, it is deemed essential to the.safe conduct of their business that it should be understood by depositors that the right to enforce.

the rule remains with the bank. The application of it, and its modification in special cases, should be left to the officers themselves.

II. The decisions of other courts, by the great weight of authority, sustain the right of savings banks, under similar rules, to hold the deposit until indemnity is tendered. *Heath* v. *Savings Bank*, 46 *N. H.* 78; *Wall* v. *Savings Institution*, 3 *Allen* 96; *Mitchell* v. *Savings Bank*, 38 *Hun* 255 (1885).

This last case is of special importance, because, on this point, it overrules the *dicta* to the contrary made in *Warhus* v. *Bowery Savings Bank*, 21 *N. Y.* 543.

*Palmer* v. *Savings Institution*, 14 *R. I.* 68; 51 *Am. Rep.* 341, *contra*, relied on the case of Warhus *v.* Bowery Bank as establishing the law in New York, and followed this case.

These cases are the only authorities bearing on the precise point, and, as I insist, the decisions are substantially with the defendant.

III. The true and only judicial remedy, in case of the loss of a deposit-book, is by a suit in equity. In that court, the clause of the by-laws requiring production of the book may be treated as a stipulation which, in its essential nature, is a forfeiture of the deposit agreed upon by the parties for the protection of the bank in its payments, and a court of equity has the power to effect completely the protection of the bank, by requiring indemnity as a condition of relieving from the forfeiture.

The case, in this respect, is analogous to that of the equity jurisdiction in case of lost bonds.

Here the rules of common law originally required a *profert* of the bond, and this was so essential, that where, for any reason whatever, *profert* could not be made, there could be no recovery at law.

This rule of the common law the court of equity treated as a forfeiture, occasioned by the rules of common law, and protected the rights of all parties by decreeing a recovery upon giving indemnity. 2 *Pom. Eq. Jur.*, § 831.

A court of law has no jurisdiction or power to indemnify the defendant against costs in a judgment in favor of the plaintiff, such as is undoubtedly possessed by a court of equity.

This supplies an additional reason why the bank should not be held liable at law, for there can be no question whatever, that where bonds of indemnity are not given, the bank could not, with any safety, pay on mere *ex parte* statements or affidavits, and it would be obliged to have every case proved in a judicial proceeding. The expense of this proof should justly fall upon the negligent or unfortunate depositor, and not upon the bank representing the other depositors.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. If there is any defence in this case, it must proceed from the harsh and rigorous application of legal rules. The suit is against the defendant, a savings bank, by a depositor, for the money confided to it. The proofs show that this money is justly due; that there is no dispute whatever upon this subject, and that the defendant can make payment of this debt without any possible danger or embarrassment to itself. The apparent reason assigned for the defence interposed is, that it is important for the company to have its rights and obligations, inherent in its contracts of deposit, judicially expounded—a motive for its opposition unexceptionable enough, except in view of the fact that the desired elucidation is to be obtained at the loss and expense of one of its depositors.

The inquiry is presented in this wise, as will fully appear in the statement prefacing this opinion:

The defendant, upon the plaintiff making a certain deposit, gave her a book in which such deposit was entered, and in which book were printed certain by-laws of the company, among which were the following, viz.:

"Art. 9. All drafts must be made personally or by order in writing of the depositor, if the institution have the signature of the party in their signature-book, or by letters of attorney duly authenticated; but no person shall have the right to

demand any part of the principal or interest without produc-ing the original deposit-book, that such payments may be entered therein.

"Art. 10. All deposits shall be entered in the books of the institution, and a duplicate or pass-book shall be given to each depositor, in which the deposit shall be entered, and which shall be the voucher for the depositor; and possession of such duplicate or pass-book may be treated by the institution as authority to pay the amount due thereby to the person pro-ducing the same, and all payments so made shall be deemed good and valid payments to the depositors respectively."

The contention of the defendant is, that the plaintiff con-tracted with it, in making her deposit, on the basis of these rules.

The plaintiff lost her deposit-book, and it is now insisted before this court that she has, by such accident, become dis-enabled from suing the company, in a court of law, for her moneys admittedly in its hands. This is the defendant's con-struction of its agreement with its depositors, and such con-struction is sought to be justified by a reference to that clause of its tenth by-law, already cited, which declares that " no person shall have the right to demand any part of the princi-pal or interest without producing the original book, that such payments may be entered therein."

If I concurred in this interpretation, I should scruple much with regard to the legality of such stipulations. A by-law, declaring that those depositors in one of these banks who, by inevitable accident, shall have lost their deposit-books, shall thereby forfeit to the company their respective claims, would seem to be so inconsistent with the general purpose for which these institutions have been called into existence, that it would be, to say the least in its disfavor, of exceedingly doubtful validity. It is true that these banks are private cor-porations, but, nevertheless, when we regard the nature of their business, they may be said to be possessed of a certain public aspect. They are designed, mainly, for the benefit of the thrifty poor, a numerous class composed of persons of

moderate means.   The claim of a right to forfeit, at the will
of these bodies, the scanty saving of this obviously defenceless
class, when visited by a particular misfortune, might be useful
if such bodies were simply banks of accretion for the benefit.
of their stockholders ; but if they are to be considered, as they
must be, custodians of the moneys confided to them by a large
body of the people, such a claim seems strangely out of place,
as, clearly, it is not necessary to the safe and proper conduct
of their business ; it is the assertion of a right in these com-
panies, by virtue of the misfortunes of its depositors, to take
to its own use moneys that do not honestly belong to it.   Nor
is the harshness and injustice of such an assertion in any de-
gree mitigated by the suggestion contained in the brief of the
counsel of the defendant, that the Court of Chancery is open
to the despoiled stockholder, for, in view of the fact that such
proceedings would be at the expense of the party seeking such
relief, and, as in most cases, those costs would exceed the
amount in dispute, the suggestion of that remedy for the
wrong sounds little better that sheer irony.   This intimation
of such a remedial recourse appears to have its origin in the
conviction that the act of the company in thus retaining the
money is a palpable wrong, as the only ground on which a
court of equity could interpose its assistance would manifestly
be because the conduct of the company, in this particular, was
unconscionable, and was not to be reconciled with fair dealing.

If the question, therefore, had been presented in this naked
form, I should very much doubt, as has already been said,
whether a by-law, having the force asserted, should be sus-
tained.   Nor would the contract of the depositor, stipulating
to leave his money upon the terms resident in the by-laws of
the company, necessarily subject his rights to the supposed
clause of forfeiture, as it might well be held that his agree-
ment was referable to such by-laws alone as the corporation
had the legal right to enact.   Nothing less than the clearest
expression of intention would, in all probability, induce the
court to the conclusion that it was the purpose of the contract-

ing parties that the creditor was, in a certain contingency, to be placed under the arbitrary power of the debtor.

But it is not necessary to decide this question in the present case. These parties have not entered into such supposed engagement. The by-law referred to has not the force ascribed to it. Even standing alone, and intrinsically interpreted, its terms do not seem susceptible of being read in the sense asserted. Its purpose is to regulate its dealing with its depositors when they are in possession of their books, requiring them to be produced so that the "payments may be entered therein." The language appears to imply that the books are in the possession and under the control of the depositor; there is no intimation of a forfeiture in the clause unless they are forthcoming. It is a provision adjusting the ordinary routine; it seems to have no reference to extraordinary emergencies. I do not think that the clause imports that the intention was to make provision in case of an accidental loss or destruction of the book of the depositor.

But whatever doubt might remain, looking at this by-law in a state of isolation, such doubt is dispelled by a reference to another of these by-laws, article XV., which is in these words, viz.: "Should any depositor lose his book, he is required to give immediate notice thereof to the institution; and in cases of doubt as to the identity of the depositors or claimants, the board may require such testimony and security as they may deem necessary."

It seems manifest that this latter provision will not reasonably harmonize with the former provision, construing it according to the contention of the defence in this case. Why should the depositor give notice of the loss of his book when by such loss his claim upon the company has been extinguished? It seems quite unreasonable to suppose that the company, by these two several by-laws, has meant to say to its depositor, If you cannot produce your book, you cannot legally make demand on us for your money, but, nevertheless, you "are required to give immediate notice" of the loss of the book "to the institution." It is very plain, as I think, that such was

not the intention, and, to produce coincidence between these two by-laws, it is necessary to conclude that the former of them has no application to the state of affairs arising from a loss of the deposit-book by accident. In such event, all that the depositor can be required to do is to give notice that his book has passed from his control by casualty, producing testimony and giving security if his identity be in doubt.

In the present case, notice of the loss of the deposit-book was properly given, and there was no doubt raised as to the identity of the depositor. She had, therefore, a right to her money on deposit, and is entitled to judgment.

On the foot of this exposition of these by-laws, it is deemed that no danger or embarrassment can beset this company in the prosecution of its business. When a deposit-book is alleged to have been lost by the depositor, the corporate officers can safely pay such depositor on that basis; and in case it afterwards appears that the claim of the depositor was fraudulent, and instead of having lost his book he had assigned it, still such payment will stand, in the absence of proof that notice prior to such payment had been given to the company by the assignee of his right to the money. This is the settled rule with respect to all non-negotiable choses in action which have been transferred to third parties, and there is nothing in these by-laws, or in the nature of these contracts growing out of these deposits, that will modify or in anywise affect the principle.

It is proper to say, further, that there was no proof before the trial judge that the plaintiff agreed to be bound by these by-laws in question. It was not shown that she signed any agreement to that effect, and the mere fact that a book was given to her containing these printed by-laws would not have the force arising from an assent to them on her part. Her attention, as far as appears, was not called to this printed matter, and the defence was of a nature calling for strict proof in its support.

Let the Circuit Court be advised that the plaintiff should have judgment.